Abbott v. Comte de Garcon, 22-1962. Good morning, Josh Bernstein representing appellants. The court below held that five pages of pleadings and over 25 separate numbered paragraphs dedicated exclusively of describing plaintiff's hours in excess of 40 per week were insufficiently specific to state a plausible claim. That decision was error and must be overturned. Plaintiffs pled... Suppose you had only four paragraphs and those paragraphs were paragraphs 151 through 154. Wouldn't that be enough in itself? Absolutely, your honor. Absolutely. Because it's not the volume of how many, it's not how long your complaint is. Of course. It's a question of what is pled in the quality, not the quantity. I absolutely agree with you, your honor. Why is not any putative class member or employee who left the company before June 3rd, 2018? Why are they not time-barred? Well, there are... I mean, look, I think the most of those plaintiffs only have New York labor law claims. I think that in a predecessor version of the complaint, I had them in as FLSA claimants. But regardless, there are doctrines in the context of FLSA claims that if individuals were not on notice of their eligibility for overtime, and I'm blanking on the term for the doctrine right now, but there can essentially be tolling on their claims. So I do think the plaintiffs who are not the three named ones that are dealt with in most of the decision below, who clearly have timely FLSA claims. I think part of the question there is, so who are we actually dealing with here? As I read your brief, you didn't say anything about all those people... I think there's a chart somewhere that says these people are... or maybe it's just my law clerk made me a chart. Here are all the people and all the dates and whatever. But I didn't hear an argument about those, again, because they were mostly New York state claims. I thought there were only three or four plaintiffs who were actually immediately implicated by this appeal. Am I wrong about that? I think that that's how the court below looked at it. The court below's analysis was limited to this. Yeah, but I didn't get anything in your brief that told me that we were talking about other people. Well, I... After all, I mean, there could be a class action, maybe. Maybe there couldn't be, depending on how representative the named plaintiffs are, depending on whether the claims are sufficiently similar and so on. But we're not dealing with that here. We're just dealing with named plaintiffs, right? Well, that's right, Your Honor. And in this case... Which named plaintiffs is the question? Because to the extent that there are named plaintiffs who only have state law claims and whose federal claims certainly look time-barred on first blush, and I'm not sure I remember any big argument about that in the brief, they're not really in the case anymore for now. Maybe you can bring them back. But as far as we're looking at now, I thought this appeal was really only formulated in terms of specific named plaintiffs. Mr. Herrera, and I can't remember if there were two or three more. Yes, Azarkan. Those are the people that we're really analyzing. And what are the allegations with respect to them? And the allegations with respect to them and the hours they worked are identical to all of the other plaintiffs. And so while Your Honor is certainly correct that the court below and maybe immediately implicated in the FLSA claim are to those particular plaintiffs, those plaintiffs pled their hours in the same exact fashion as the others. And timeliness is not an issue in this appeal as far as you're concerned, is that right? Yes, Your Honor. So – and once again, I'm just trying – I like to try and make my life as simple as possible. And maybe I can't. I have a job to do. And if I can't make it simple, so be it. But I want to understand what's really at issue. There are a lot of different allegations in the complaint about the particular types of hours that were extras in one sense or another. And they're varied, I would say, and they come – some of them are more specific than others. Some of them are more general than others. Do we need to address all of those if there were – in other words, is it enough in your view to – if there are allegations that establish that there is some violation here? Do we – we have to decide at this stage, do we – the extent of that violation, that's all for later. Not at all, Your Honor. I absolutely agree. I mean their schedule was not a 9-to-5. It was a 9-to-6 or 10-to – 10-15-to-7, five shifts a week. Your argument, as I understand it, is that it was so substantially above 40 hours per week, so in the low 50s at least, that whatever discount we could attribute to, for example, a lunch break or anything else, couldn't get you down to below 40. That's absolutely correct, Your Honor. Don't you argue also that they had no lunch break as a matter of law? Yes, that's absolutely true. These are salary employees. Putting together paragraph 154 with the regulation that says a lunch break is not a lunch break if you have to be on call essentially. Correct. And you don't have to sort of parse out if you are on call for the whole lunch break whether on any given day you were called to do something concrete. The fact that you have to be there available to customers if customers come in and you have to leave your sandwich somewhere and run and deal with that customer, then it is not by regulation a lunch break. That's absolutely correct, Your Honor, and plaintiffs explicitly pled that they were not fully relieved of duties for lunch. So the simplest case for you is, is it not, paragraphs 151 through 154 say the plaintiffs were regularly scheduled to work a shift that adds up to – five shifts a week that add up to more than 40 hours, and they had to work through lunch by the definition of work in the regulations. Therefore, you don't deduct anything from that. Therefore, at least they worked 45 or 44 ¾ hours per week. That's right, Your Honor. That should be the beginning. You might extend that to 164. Yeah, certainly. Certainly, Your Honor. Sure. But I'm not saying the minimum – if you establish that, you'd be right, but you've got other stuff. Oh, we've got so much other stuff. It's overabundant. There's a cornucopia in here. That's what everybody says. But sometimes it's true. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Michael Gettig of the firm of Davis Wright Tremaine, appearing on behalf of all of the defendant appellees. And, Judge Lawyer, you hit the nail on the head when you asked about the identity – That was Ma'am Lynch. Oh, I'm sorry. Excuse me. No offense taken. You hit the nail on the head when you talked about the population of the plaintiffs here, of the appellants. Because at the outset, I think it would be useful to frame the appeal as to what it is not about and who is not included. This appeal is not about any of the state court claims asserted on behalf of any of the 13 appellants. Those are all – those claims have been dismissed. They are not part of this appeal. And all of the appellants are concurrently pursuing those claims. Ullo, one question does arise with that. Suppose we were to reverse the district court with respect to the federal claims. The state claims were dismissed because there is basically no federal claim left. And so in the exercise of discretion, the state claims aren't going to be heard. But if it goes back and the federal claims are back, don't those state claims come rocketing back? Well, we would submit that the plaintiffs have charted their course already. It's proceeding in the state court below. And I guess I should have asked Mr. Bernstein this. It was not clear to me. I mean, they don't come automatically rocketing back if the appellants haven't asked for that relief in this appeal. Correct, which they have not done. And the other important part – the defects in paragraphs 151 through 164 are that they are inconsistent with Second Circuit precedent. In 2013, this court entered three opinions, Lundy, Nakahara, and de Jesus. All of which, as I understand, involved claims of hours that were substantially below the 40 hours. Is that right? Well, it had to be. So here we've got a series of allegations. We could go from 151 to 164, but it's just a lot of allegations, which I think confused the district attorney a little bit. But we have a series of allegations that, if you add them up, certainly a reasonable person could infer that it's substantially over 40 hours. So this case, in terms of the allegations, seems to be different from Lundy and Nakahara and de Jesus. I respectfully disagree because – let's take Lundy, for example. Lundy had three plaintiffs. And in Lundy, at least the complaint there identified each plaintiff and made specific – and made allegations with regard to each plaintiff that they typically worked in excess of 40 hours and usually skipped their lunch breaks. And even there, this court said, that's not enough. Because it's not specific to the – because we can't rely on these sorts of generalized allegations. Yes, but what's a generalized allegation? I mean, to say something is typical or usual is one thing. Here, these plaintiffs – and I don't know why we shouldn't take plaintiffs to mean all the plaintiffs. I don't know why you'd have to name them all again in each allegation. The plaintiffs regularly scheduled hours. That means what they were hired to do, at least if you're giving every inference and reading every inference in their favor, consisted of five shifts a week. And they either worked the opening shift or the closing shift, which overlap a little bit or a lot, but have slightly different hours. Okay, maybe they could have said which ones work the opening shift and which ones the closing shift, but both of those add up to more than 40 hours a week. Ah, but what about lunch breaks? Well, then they allege that they were not completely relieved from duty during their lunch breaks. Now, that's not a – they're not saying, I take it – again, reading it in the light most favorable to them, they're not saying that often we had to do tasks during lunch. They're saying they were not completely relieved from duty. And in light of 29 CFR Section 785.19, and I take it that this allegation is deliberately tailored to precisely mirror what that regulation says, if you are not fully relieved from duty, you know, you can't go out to the bar on the corner to have your lunch. You have to be there and you have to respond to calls if any happen. Then, under the regulation, it's not a lunch break. You don't have to say, well, how many days did they actually have to go see a customer? Or how many days did somebody say, hey, if you need to have an emergency in the stock room, you have to come over. And how long did that take and how much did that detract from your lunch break? It just ain't a lunch break. It counts as work hours under the regulation. Now, again, you may have legal arguments that that's not really right or that's an illegitimate regulation or whatever would have to be litigated here. It might not be true. I'm just saying I don't see how you can read even just those four allegations and not say that these people are specifically saying that our regularly assigned work hours were nine hours a day, five days a week. And don't come whining to us about it. You have to talk about lunch breaks because we didn't have any lunch breaks by law. Well, and that's precisely what Lundy answered. That's the question that Lundy answered. Because Lundy said in order to state a cause of action, you have to identify a given work week. But why didn't you say it was every work week? Because it's not saying all the time, vaguely, the boss would come and ask us to work extra hours. Probably because that's not even really quite plausible. It's not all the time. It's certain times. So let's hear some more about it. This complaint really goes well beyond that because what this complaint alleges, and we have to assume that it's true, that they had a, I won't use the word scheme, but they had a program to systematically classify salaried employees as managerial employees when in fact they had no policy making roles. They had no roles in disciplining other people. They had no roles in setting time for other people and so forth and so on. And then it's further complicated because the district judge, for some reason or another, said, look, let's assume they're salaried. And then she penalized them for not having at their fingertips the time records that they would be entitled to have if they were salaried employees. So help me understand what I'm missing here. Well, in Lundy, and in the cases that have followed that, which I mean, if someone were to ask me, last November, during the first week in November, alleged what time you got to work and what time you leave. That's an impossible thing. I could, maybe you could, but I can't. Well, the elegance of Lundy in calling upon a plaintiff to identify at least one week in which they were denied overtime, is that it puts them to the test. Because in this complaint, we have all sorts of allegations that are time barred and that have to do with periods of time in which the plaintiffs in question were not misclassified. Well, that's fine. But I just have trouble with the idea that, I mean, suppose they attached a contract or a work schedule that came from – this is the work schedule I was given by the employer to absolutely document. You're supposed to be here from 9 to 5. And then there's a paragraph that says – and nobody leaves for lunch. You can take an hour and chat and be at your leisure and eat your sandwich as long as you don't leave the office. And whenever anybody comes in, you have to spend – you have to go see them. You'd have to allege that that work practice was in effect in this particular period, as opposed to just alleging for the entire time I worked, this was the rule. I don't understand how you could ask for more than that or why you would need to ask for more than that. Because it's very different than, oh, yeah, all the time I work 80 hours a week. Because all the time there's all these tasks and it takes up a lot. That's very subjective and dependent. And we all know that maybe a lot of times that happens to somebody, but they're not – we always were called upon to do extra tasks. They're saying the specific thing we were hired to do is already more than 40 hours a week. Now all the other stuff, maybe when discovery is taken, they won't be able to show that this happens so often. But I don't see how they haven't alleged enough to say that just their regular schedule already is to work more than 40 hours a week. I would submit that if that were the case, if they were working these sorts of hours, then it would be an easy lift for them to satisfy the standard of Lundy and identify one week when they were allegedly misclassified. So should we send it back with instructions that they can amend to say, yeah, during this week we did that because we did it every week? Well, a couple of points on that. Number one, they have not asked for leave to replete. They have not asked – that's not on the appeal. The dismissal with prejudice is not on the appeal. Number two is that they have had five bites – That was not identified on the issue presented. But even if it were, they had five opportunities. They had five shots at amending their complaint. Even assuming that omission, why does that make their claims implausible? The claims that Judge Lynch said are that we regularly worked more than 40 hours, and our employees have a system in place to deliberately miscategorize people's status. So why isn't that a plausible claim? It may not be true. It may not be supportable. But why do they have to identify a week to make that seemingly plausible? Why is the failure to identify a week make that kind of claim implausible? Because of the very failure to identify a week. So you derive from Lundy a very specific rule, which is that in these FLSA cases, the plaintiffs must identify at least an individual week. Correct. Is that the rule that you use? Correct. And that has been the court's opinion. These are summary opinions, but in Bonn-Winningham in 2019, this court held – Just to pick up on, I think, Judge Parker's questions, Lundy did not involve an allegation of misclassification, of across-the-board misclassification. Do you agree with that? Correct. Did Nakahara? No. De Jesus? I don't believe so. So this is a case where there is an allegation, or actually a series of allegations, about systematic, systemic misclassification of employees as managers. Why isn't that sufficiently different to distinguish this case from the three 2013 cases on which you're relying? Because, again, if – let's just take, for example, Herrera. Herrera alleges that he worked 58 hours in the last week of December, and he worked overtime in the beginning of January as well. The problem, though, is that Herrera doesn't actually allege that he was misclassified during that period of time. Yeah, I get all of that, but I'd ask another series of questions about Lundy and its peers there. Are any of those cases in which the argument was that they signed on the dotted line for their regularly scheduled hours to be 45 hours a week, as opposed to a generalized allegation that we sort of always have worked a real lot? Well, the feature of Lundy that works even in the event of a misclassification case is that by putting on the plaintiff the onus of identifying a single week, that keeps the floodgates at a reasonable level when it comes to any claim of misclassification. Because otherwise, any claim of misclassification whatsoever just has to say I worked a lot of hours, and that's insufficient under – It's not that he worked a lot of hours. You don't see any distinction between I worked overtime all the time and my regular schedule that I signed up for through the entire period I worked there, however, whether as classified as this or classified as that, whether it was accurate or inaccurate, the regular schedule was 45 hours a week. Why isn't that enough? Why would you need to say, and that was also during this particular week or during that particular week, when the clear allegation is it was every week that was the regular schedule. Those were the regular hours. We're not talking about the special crush periods. We're not talking about, yeah, the boss wanted you to be there early and used to say that if you're on time, you're late, and all of this sort of vague stuff or episodic stuff. It's their actual work schedule. Then it would be easy for a single plaintiff, it would be easy for those four plaintiffs with timely claims to assert that. What does that add? Pardon me? The issue that Judge Lynch was pointing you towards. We regularly worked, our schedule set by our bosses was in excess of 40 hours. For example, in X week. It's your theory that on top of that, you have to identify a week. That's what Lundy calls for. You have to identify a week. You have not plausibly alleged a violation of the statute. The plausibility in this case also has to do with the generality of the allegations. All of those claims, all of those. When you say generality of the allegations, again, you're going back to Lundy. The rule is you've got to make specific allegations about an individual week, so general allegations, regular work week, whatever it is, are insufficient. That is the rule you want us to, some might say, adopt. You would say follow. We got your argument. Thank you very much. Thank you very much. Mr. Breslin. To follow up on the line of questioning your honors just engaged in, the first 60 paragraphs of the complaint lay out the months and the weeks when plaintiffs worked these hours. There's an individual heading for each plaintiff, and it says when they held the relevant title. Instead of saying from January to June of 2018, I need to say, and the third week of January, and the fourth week of January, it's like, what are we doing here? It's just, these are arguments that inform, make sense, but when you look at the details of them, completely fall apart. To address something else, Judge Loyer, as you pointed out, on page 32 of plaintiff's brief, plaintiffs did ask for if we don't get a full overturn to allow us to replete. Because if the issues are saying these specific things that are obvious from what the pleadings say, I can do that. The complaint's 33 pages long. I can make it 300 pages long. But that doesn't benefit anybody. Just as a housekeeping matter, I think maybe now I'm a little confused. So who are we talking about? Can you just give us the names of the people that? Sure. Curtis Henninger, Gabriel Herrera, Amir Azarkan. Those are the people with clearly timely FLSA claims. Do you have any people in here who have time-borrowed FLSA claims? I think some of the individual plaintiffs, if there is no tolling applied later in the case, will only have state law claims. I think that's true. And with respect to those state law claims, Mr. Gotti said that this is now in state court and proceeding. It's proceeding, but it's not accurate to say that if it's overturned, we're going to continue with parallel litigation. I don't think that's likely. You want things litigated in one place. That's right, and we can always voluntarily dismiss the state case. That's not going to be an issue down the road if the case is overturned. Thank you. Thank you very much. We will reserve the decision.